UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES GAJDA,

        Petitioner,

v.                                                                     CASE NO. 07-12738
                                                                     HONORABLE NANCY G. EDMUNDS

HUGH WOLFENBARGER,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

Petitioner James Gajda has filed a habeas corpus petition, challenging his state court convictions for second-degree murder and possession of a firearm during the commission of, or attempt to commit, a felony (felony firearm). He claims that: the prosecutor committed misconduct and failed to prove the elements of second-degree murder; his trial and appellate attorneys were ineffective; his rights to an impartial jury and to be present at all stages of trial were violated; and he is actually innocent of second-degree murder. Respondent urges the Court to deny the petition. The Court has concluded from a review of the pleadings and record that Petitioner is not entitled to habeas relief. Accordingly, the habeas petition will be denied.

**I. BACKGROUND**

Petitioner was charged in Lapeer County, Michigan with first-degree murder and felony firearm. The charges arose from allegations that Petitioner shot and killed David Porter. The testimony at trial indicated that,

> on December 16, 1999, defendant had a conversation with his former fiancé, Tara Cascaddan, who was [David] Porter's girlfriend. Cascaddan told defendant that she believed that Porter was planning to propose marriage to her, and defendant told her that he would never allow her to marry Porter. Numerous e-mail messages from defendant to Cascaddan demonstrated defendant's continuing devotion to Cascaddan, including one e-mail in which defendant stated that he would kill anyone who hurt Cascaddan. Later that same evening, defendant called Cascaddan from the road and told her that he was having problems with his truck, and he asked her to send Porter with a wrecker to get him. Later, Porter was reported missing. Police stopped defendant in his vehicle and asked him about Porter. Defendant admitted that he called for Porter, but he stated that he saw Porter drive past him on the road and that Porter never stopped. The officers noticed blood on defendant's jacket. Sergeant Dave Eady asked defendant if they could take the jacket until they could ascertain Porter's whereabouts, and defendant agreed. Ultimately, Porter was found by the side of the road in a ditch. He had been shot in the head. Later, in a statement to police, defendant admitted that he shot Porter, but he claimed that his gun discharged accidentally.

*People v. Gajda*, No. 233168, 2002 WL 31105294, at *1 (Mich. Ct. App. Sept. 20, 2002) (unpublished).

On December 6, 2000, a Lapeer County Circuit Court jury found Petitioner guilty of second-degree murder, *see* Mich. Comp. Laws § 750.317, and felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by life imprisonment for the murder conviction. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion, *see Gajda*, 2002 WL 31105294, and on April 29, 2003, the Michigan Supreme Court denied leave to appeal. *See People v. Gajda*, 661 N.W.2d 239 (Mich. 2003) (table).

Petitioner filed a motion for relief from judgment, which the trial court denied after holding an evidentiary hearing. The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D), *see People v. Gajda*, No. 271550 (Mich. Ct. App. Jan. 31, 2007) (unpublished), and on June 26, 2007,

the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Gajda*, 732 N.W.2d 907 (Mich. 2007) (table).

Petitioner filed his habeas corpus petition through counsel on June 28, 2007.  The Court understands the petition and supporting brief to raise the following grounds for relief:

1. Petitioner was deprived of his federal constitutional right to due process and a fair trial where the prosecution argued that Petitioner had the intent necessary for second-degree murder based on Petitioner's failure to seek medical attention for the decedent after the accidental shooting.  Petitioner's intent after the shooting was irrelevant because the actus reus and mens rea of a crime must concur in time.  If the act causing death - the accidental shooting – was performed without criminal intent, then subsequent criminal intent is insufficient to support a conviction.  U.S. Const. Ams. V & XIV.

2. Petitioner was denied his federal constitutional right to the effective assistance of counsel where his trial attorney failed to object to the prosecutor's misstatement of the law regarding second-degree murder in closing argument, the jury actually convicted Petitioner of second-degree murder, and his appellate attorney did not raise the issue on appeal.

3. The jury was improperly encouraged to experiment with the gun, thus violating Petitioner's right to an impartial jury and on properly admitted evidence.

4. Petitioner had a constitutional right to be present at the tow truck demonstration.

5. The prosecution made improper civic duty arguments and appeals to sympathy.

6. Trial counsel was ineffective for failing to object to the improper jury instructions, the order that Mr. Gajda not be present at the demonstration, and the improper arguments by the prosecution.

7. The relief requested should be granted for the reason that Mr. Gajda is actually innocent of second-degree murder.

Respondent urges the Court to dismiss the petition on the basis that Petitioner's

claims lack merit or are procedurally defaulted. Procedural default is not a jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009) (citing *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)), and the Court finds it more efficient to analyze Petitioner's claims on their merits than to perform a procedural-default analysis. The Court therefore excuses the alleged procedural defaults and will proceed to address Petitioner's claims on their merits.

## II.  Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of a state court's factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

4

result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

## III. Discussion

### A. Sufficiency of the Evidence; Actual Innocence; Misstatement of the Law; Counsel's Failure to Object

Petitioner alleges that, during closing arguments, the prosecutor equated the requisite intent for second-degree murder with Petitioner's failure to seek medical attention for the victim after the shooting. Petitioner claims that he is actually innocent of second-degree murder and that there was absolutely no evidence of a causal connection between his failure to seek medical assistance and Mr. Porter's death. Petitioner maintains that the shooting was accidental, that his subsequent intent was an insufficient basis to support his murder conviction, and that his trial attorney should have objected to the prosecutor's argument.

No state court directly addressed Petitioner's sufficiency-of-the-evidence and actual-innocence claims on the merits. Consequently, this Court's review of those issues is *de novo. Thompson v. Bell*, 580 F.3d 423, 439 (6th Cir. 2009) (citing *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005)).

### 1. Sufficiency of the Evidence

5

> The relevant question on review of sufficiency-of-the-evidence claims is
>
> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See *Johnson v. Louisiana,* 406 U.S. [356, 362 (1972)]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The prosecution need not rule out every hypothesis except that of guilt. *Id.* at 236. Furthermore, the focus is not "on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402 (1993) (emphasis in original).

Courts must apply the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. In Michigan, the elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v. Smith*, 731 N.W.2d 411, 414-15 (Mich. 2007). Malice is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998) (citing *People v. Aaron*, 299 N.W.2d 304 (Mich. 1980)). Malice may "be inferred from the use of a deadly weapon" and from "evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999). But "[i]ntent alone is not enough to convict a person of a crime. There must be an act taken in

conjunction with the intent . . . ." *People v. Patskan*, 199 N.W.2d 458, 463 (Mich. 1972).

Petitioner conceded at trial that he caused Mr. Porter's death, and the evidence adduced at trial suggested that the shooting was intentional, not accidental. As explained by the state court,

> Defendant's numerous e-mails to [Tara] Cascaddan indicated that defendant was still in love with her. In one of the e-mails, defendant threatened to kill anyone who hurt Cascaddan. On the evening of the shooting, Cascaddan told defendant that she believed Porter planned to ask her to marry him, and defendant told her, "That's one man I'll never let you marry." Later that same evening, defendant claimed his truck was not working properly and he called her to have Porter come with a wrecker to help him. Although defendant maintained that Porter was shot when his gun accidentally discharged, the characteristics of Porter's injury indicated that the muzzle of the gun was less than twelve inches from Porter's head when he was shot. Defendant dragged Porter into a ditch and left him there, even after he saw Porter move. Additionally, although defendant's truck was allegedly malfunctioning such that he needed a tow, he was able to drive it home after the shooting.

*Gajda*, 2002 WL 31105294, at *3. Finally, a tool marks examiner for the State Police testified that he was unable to make the gun discharge accidentally during testing.

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecutor that Petitioner did not accidentally shoot Mr. Porter, but that he intended to kill him or to cause great bodily harm. Therefore, the evidence was sufficient to sustain Petitioner's second-degree murder conviction.

### 2. Actual Innocence

Petitioner alleges that he is actually innocent of second-degree murder, but "a claim of 'actual innocence' is not itself a constitutional claim," *Herrera,* 506 U.S. at 404, and the threshold for a hypothetical claim of actual innocence is "extraordinarily high." *Id.* at 417. A habeas petitioner must show that, "in light of . . . new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that

more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Three and a half years after Petitioner's trial, he obtained an affidavit from Dr. Stephen Cohle. The affidavit states that David Porter would have died immediately or within minutes after being shot and that no medical assistance or treatment could have saved him even if he had been treated immediately after the shooting. Although Dr. Cohle's affidavit purports to be new evidence, Dr. Kanu Virani testified at trial that a bullet entered Mr. Porter's head and injured his brain. Dr. Virani speculated that Mr. Porter fell to the ground and scraped his knees after he was shot and a few minutes prior to his death. Dr. Virani opined that Mr. Porter would not have been able to move voluntarily after being shot because pressure in the brain would have shut down the brain. (Tr. Nov. 30, 2000, at 507-09.) The jury could have inferred from this testimony that Mr. Porter died shortly after being shot.

There was additional evidence that could have led the jury to believe Petitioner lured Mr. Porter to an isolated location and then intentionally shot him without justification or excuse. Given the strength of the evidence presented at trial and the minimal evidentiary value of Dr. Cohle's affidavit, it is unlikely that the affidavit would have caused a reasonable juror to doubt whether Petitioner was guilty. Thus, this case is not one of the rare and extraordinary cases in which a claim of actual innocence warrants a new trial.

### 3. The Prosecutor's Alleged Misstatement of the Law

Petitioner claims next that the prosecutor misstated the law on second-degree murder and asserted a fact unsupported by the evidence when he insinuated that

8

Petitioner's failure to assist the victim after the shooting caused Mr. Porter's death. Petitioner raised this issue in his motion for relief from judgment. The trial court found no merit in the issue. The court stated that the prosecutor was merely making an alternative argument in response to Petitioner's theory of an accidental shooting. The trial court went on to say that the prosecutor was free to emphasize any particular theory of the case and that Petitioner was not deprived of a fair trial by the prosecutor's argument.

### a. Legal Framework

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). To prevail on his claim, Petitioner must demonstrate that the prosecutor's conduct deprived him of a specific constitutional right or infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The misconduct must have been "'so egregious . . . as to render the entire trial fundamentally unfair.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

The test for prosecutorial-misconduct claims is two-fold. *Slagle v. Bagley,* 457 F.3d 501, 515 (6th Cir. 2006) (citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)), *cert. denied*, 551 U.S. 1134 (2007). First, courts must ask whether the prosecutor's conduct or remarks were improper. *Id.* at 516. Second, if the conduct or remarks were improper, a reviewing court must consider whether the impropriety was so flagrant as to warrant reversal. *Id.* When evaluating flagrancy, courts must consider "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the

jury; and (4) the strength of the evidence against the accused." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

Prosecutors may not misstate the law during closing arguments, *United States ex rel. Jones v. Chrans*, 187 F. Supp. 2d 993, 1013 (N.D. Ill. 2002); *Rose v. Duckworth*, 578 F. Supp.1387, 1389 (D.C. Ind. 1984) (quoting 3 Wright, *Federal Practice and Procedure* § 555 at 273 (1982)). Nor may they misrepresent the facts or assert facts never admitted in evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). They may, however, "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).

### b.  Application

In his closing argument, the prosecutor refuted Petitioner's defense of an accidental shooting by arguing that the facts did not support a manslaughter conviction. The prosecutor stated:

> Hiding the victim to ensure death is a second and completely separate act. I submit to you that the totally separate and independent act constitutes second degree murder under these facts. If we believe his story, that the gun discharged accidentally, his act of getting down and ensuring that there could be no help, ensuring that was going to cause his death, ensuring and taking action, a great deal of action . . . is definitely action on his part that showed an intent to kill, an intent to ensure death.
>
> . . .  His story is I'm looking at this gun; it goes off and the next thin[g] he's on the road. He doesn't even know where he's hit. And yet his very first impulse is to drag him off the road to ensure his death. *This act alone supports a conviction for second degree murder*.
>
> However, that really isn't the facts in this case. The act of dragging a living victim from the road also speaks very loudly. It shouts to us of an even greater criminal intent. . . .  [T]he Defendant's first reaction, is to hide the injured person. What does that tell us? It shows guilt and it shows a plan.

10

It is not a natural reaction.

. . . .

. . . He's going to make sure this guy is dead, that he can't get help, that no one will find him. He's going to ensure death. That is intent. His action in doing that is an act with the intent to make sure of the result. The same as pulling the trigger, his action is going to result in death even if it's not a serious wound. He's going to make sure he bleeds to death with no help out in the woods. *That is second degree murder.* But that's only if you believe his statement [that the shooting was accidental.]

. . . .

We talked about second degree murder at the beginning. I don't really thin[k] it's an issue. I think the facts in this case, as supported by the evidence, show the real truth, that this was a plan. But for one last time, second degree murder does have to have an intent to kill. *I argue to you that can be supported by his purposeful knowing act, without knowing the injury, to drag him off the road.*

(Tr. Dec. 5, 2000, at 876-78, 947-48, 974) (emphasis added.)

The prosecutor's argument was incorrect to the extent that it equated gross negligence after the shooting with the intent needed to find Petitioner guilty of second-degree murder.[1] However, the gist of the prosecutor's argument was that Petitioner's

---

[1] The *mens rea* for murder is greater than the *mens rea* for involuntary manslaughter. As explained in *Smith*, 731 N.W.2d at 418:

Regarding involuntary manslaughter, the lack of malice is evidenced by involuntary manslaughter's diminished mens rea, which is included in murder's greater mens rea. *See People v. Datema*, 448 Mich. 585, 606, 533 N.W.2d 272 (1995), stating:

" '[P]ains should be taken not to define [the mens rea required for involuntary manslaughter] in terms of a wanton and wilful disregard of a harmful consequence known to be likely to result, because such a state of mind goes beyond negligence and comes under the head of malice.'

"Unlike murder, involuntary manslaughter contemplates an unintended result and thus requires something less than an intent to do great bodily

conduct after the shooting was evidence of a plan and of intent to kill Mr. Porter.

The Court notes, moreover, that defense counsel rebutted the prosecutor's argument by stating to the jury that not doing anything and leaving Mr. Porter in the ditch to die was not second-degree murder (Tr. Dec. 5, 2000, at 943-44), and the trial court accurately summarized the law on second-degree murder in its charge to the jury. The prosecutor's alleged error was cured by the trial court's correct instruction on the law. *Skinner v. McClemore*, 551 F. Supp. 2d 627, 645 (E.D. Mich. 2008).

Furthermore, both the prosecutor and the trial court informed the jurors that the jurors should apply the law as explained to them by the court, not the attorneys. (Tr. Dec. 5, 2000, at 874, 979.) Because "juries are presumed to follow the court's instructions," *CSX Transp., Inc. v. Hensley*, __ U.S. __, __, 129 S.Ct. 2139, 2141 (2009) (citing *Greer v. Miller*, 483 U.S. 756, 766, n. 8 (1987)), the prosecutor's argument likely did not prejudice the defense and therefore was not flagrant misconduct, even assuming the argument was incorrect.

---

    harm, an intent to kill, or the wanton and wilful disregard of its natural consequences. [Citations omitted; emphasis added.]"

    See also *United States v. Browner*, 889 F.2d 549, 553 (C.A.5, 1989), stating, "In contrast to the case of voluntary manslaughter . . . the absence of malice in involuntary manslaughter arises not because of provocation induced passion, but rather because the offender's mental state is not sufficiently culpable to reach the traditional malice requirements."

    Thus, we conclude that the elements of involuntary manslaughter are included in the offense of murder because involuntary manslaughter's mens rea is included in murder's greater mens rea. [ *Id.* at 540-541, 664 N.W.2d 685 (emphasis omitted).]

*Smith*, 731 N.W.2d at 418.

### 4. Counsel's Failure to Object or Raise the Issue on Appeal

Petitioner claims that his trial attorney was ineffective for failing to object to the prosecutor's misstatement of the law on second-degree murder and that his appellate attorney was ineffective for not raising the issue on appeal. The trial court concluded on review of this claim that Petitioner's underlying claim about the prosecutor lacked merit and that Petitioner's trial and appellate attorneys were not ineffective for failing to raise or advance meritless objections or arguments.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. This standard applies to claims about trial and appellate counsel. *Webb v. Mitchell*, 586 F.3d 383, 398 (6th Cir. 2009) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

An attorney's performance is deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The prejudice prong of *Strickland* requires Petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Unless a defendant makes both showings [deficient performance and resulting prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary

13

process that renders the result unreliable." *Id.* at 687.

Although defense counsel did not make a formal objection to the prosecutor's argument, she did refute the argument in her own closing argument. Furthermore, there was ample evidence that Petitioner acted with the malice necessary to be found guilty of second-degree murder, and the trial court correctly stated the law on second-degree murder and charged the jurors to follow its instructions. For these reasons, defense counsel's failure to object at trial did not amount to deficient performance and did not prejudice the defense. "Trial counsel is not required to make frivolous objections to avoid a charge of ineffective representation." *Lewis v. United States,* 16 F.3d 1220, 1994 WL 33984, at *2 (6th Cir. Feb. 3, 1994) (unpublished). Appellate counsel likewise "cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001).

**B. The Trial Court's Instruction on the Gun in Evidence**

Petitioner alleges next that he was deprived of an impartial jury and properly admitted evidence when the trial court encouraged the jury to experiment with the gun in evidence. Petitioner states that the functionality of the gun was an important factor in the case and that the jurors should have based their verdict on the admissible evidence, not on the basis of an off-the-record experiment. The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not object to the trial court's comment during trial. The Court of Appeals went on to conclude that no error occurred.

The question on habeas review of jury instructions is "whether the ailing instruction by itself so infected the trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The disputed jury instruction in this case reads:

14

> If you want to look at any or all of the exhibits that have been admitted, simply send a note out and ask for them. Let me[] indicate to you, there is a firearm in this matter. There are dummy bullets, bullet[s] that will not fire. I don't want something to happen. So again, if you want to see the firearm, you certainly are free to take the firearm in there. If you want to see the dummy bullets that's fine also. You can do whatever you want with the gun. If you don't want to look at it, that's your decision. There will be live ammunition in plastic sealed wrap. That ammunition is not to be taken out of the plastic sealed wraps. That is live ammunition that was taken and it's in sealed packages. If you want to do anything, you can use the dummy bullets with the gun but whatever is in the sealed packages, please do not touch that. There is not going to be anybody in there with [you so] that's going to be up to you as jurors to make sure that's handled properly.

(Tr. Dec. 5, 2000, at 995-96.)

Contrary to what Petitioner says, the trial court did not encourage the jurors to experiment with the gun. The court merely stated that the jurors could request the exhibits, including the firearm in evidence, and do whatever they wanted, or nothing at all, with the gun and the dummy bullets. The court's comments did not infuse the trial with such unfairness as to deprive Petitioner of due process of law. *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)).

Furthermore, although the jurors did ask to see the gun (Tr. Dec. 5, 2000, at 999), there is no indication in the record that they experimented with it. Even if they did experiment with the gun, not all jury experiments result in an improper extraneous influence on the jury. *Fletcher v. McKee*, No. 08-1240, 2009 WL 4755293, at *3 (6th Cir. Dec. 11, 2009) (unpublished opinion citing *United States v. Avery*, 717 F.2d 1020, 1026 (6th Cir. 1989)). To the extent that the jurors may have experimented with the gun, it appears that any experimentation was part of the private, internal deliberations of the entire jury, as opposed to an extraneous influence on the jury. Therefore, Petitioner's constitutional rights were not violated and habeas relief is not justified. *See id.* at *5.

Petitioner contends that his trial attorney was ineffective for failing to object to the trial court's comment and that his appellate attorney was ineffective for failing to raise the issue on appeal. However, because the trial court's comments did not violate Petitioner's constitutional rights, his trial counsel was not ineffective for failing to object to the remarks, and appellate attorney was not ineffective for failing to raise the issue on direct review. *Lewis,* 1994 WL 33984, at *2; *Greer,* 264 F.3d at 676.

### C. The Right to be Present

Petitioner alleges that his constitutional right to be present at all stages of his trial was violated because he was absent when a demonstration was conducted outside the courthouse. Petitioner further alleges that his trial attorney was ineffective for not objecting to his absence during the demonstration.

The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not preserve the claim for appeal by objecting to the procedure during trial. The Court of Appeals determined that no error occurred and that the trial court properly conducted the jury viewing.

Defendants in criminal cases have a fundamental right to be present at all critical stages of the trial. *Rushen v. Spain*, 464 U.S. 114, 117 (1983). Although

> this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," [*Snyder v. Massachusetts,* 291 U.S. 97, 106-107, 54 S. Ct. 330, 332 (1934)], due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence," *id.*, at 108, 54 S. Ct., at 333. Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

*Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).

The demonstration in this case involved Petitioner's truck and the victim's flatbed wrecker. The jury was taken outside the courthouse to observe how the truck was hoisted onto the wrecker and how the truck was situated on the wrecker. No questions, testimony, pointing, or talking was permitted during the viewing, and the demonstration was videotaped for appellate review. (Tr. Nov. 30, 2000, at 578-85, 603-05; Tr. Dec. 5, 2000, at 1008-10; Tr. Sept. 23, 2005, at 17-18, 26.) It was not meant to be a re-enactment of what may have occurred on the night in question. Although Petitioner was not permitted to view the demonstration, he did not inform his attorney that he did not want the jurors to see the truck, and defense counsel was present during the entire demonstration. (Tr. Sept. 23, 2005, at 24, 27-28.) Defense counsel testified at the evidentiary hearing in state court that she did not think Petitioner missed anything by not observing the demonstration because she was present and reported what happened to Petitioner. (*Id.* at 28.)

Petitioner has not shown that his presence was required at the proceeding or that he was deprived of a fair and just hearing by his absence from the demonstration. Thus, his constitutional right to be present at all critical stages of the trial was not violated.

### D. The Prosecutor's Closing Argument

Petitioner alleges that the prosecutor made an improper civic duty argument and appeal to the jury for sympathy. He also claims that appellate counsel was ineffective for failing to raise this issue on appeal.

Prosecutors generally must "refrain from improper methods calculated to produce a wrongful conviction." *Viereck v. United States*, 318 U.S. 236, 248 (1943). They may not "make statements 'calculated to incite the passions and prejudices of the jurors.'" *Beuke v. Houk*, 537 F.3d 618, 649 (6th Cir. 2008) (quoting *Gall v. Parker*, 231 F.3d 265, 315 (6th

17

Cir. 2000)), *cert. denied*, __ U.S. __, 129 S. Ct. 2792 (2009).

The disputed remarks in this case read:

> While those letters [e-mail messages from Petitioner to Tara Cascadden] might make you feel a little sorry for the Defendant. If they do, if you have sympathy for him, I want you to stop and remember the one person who couldn't be here today, David Porter. Because homicide is the ultimate theft. The Defendant, not only stole everything he had, he stole everything he would ever have and that's not all. He stole the happiness of his family. He stole every Christmas, every birthday, every holiday. He stole the peaceful nights. He stole grandchildren. He stole the rest of their lives and he stole from their friends, the firemen and he stole from the whole community.

(Tr. Dec. 5, 2000, at 907.)

These remarks did not appeal to the jury to act as the community conscience and, therefore, did not rise to the level of a civic duty argument. The remarks were emotional, but prosecutors are "permitted a certain degree of latitude in summation" and "should not be required to present . . . closing arguments that are devoid of all passion." *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000) (quoting *United States v. Barker*, 553 F.2d 1013, 1025 (6th Cir. 1977) and *Williams v. Chrans*, 945 F.2d 926, 947 (7th Cir. 1991)). Even though the remarks were deliberately made, they were not extensive or likely to mislead the jury and prejudice the defense because, as the state court recognized,

> the prosecutor did not ask the jury to suspend its judgment and decide the case on the basis of sympathy. Indeed, immediately after he made the challenged remarks, the prosecutor argued the evidence and asked the jury to convict defendant "[n]ot as a favor to me or anyone else but [ ] based on the evidence and the facts that have been presented in this case."

*Gajda*, 2002 WL 31105294, at *4 (internal and end citations omitted).

Furthermore, the evidence against Petitioner was substantial, and both the prosecutor and the trial court informed the jurors that the attorneys' remarks were not evidence. (Tr. Dec. 5, 2000, at 873, 981.) The trial court also charged the jurors not to be

18

let sympathy or prejudice influence their decision. (*Id*. at 979.) Jurors are presumed to follow the trial court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

The Court concludes that the prosecutor's remarks were not improper or flagrant. Therefore, Petitioner is not entitled to relief on the basis of his prosecutorial-misconduct claim. He has failed to show that the prosecutor infected his trial with such unfairness as to deprive him of due process. Consequently, defense counsel was not ineffective for failing to object to the remarks, and appellate counsel was not ineffective for failing to raise the issue in the appeal of right.

## IV. Conclusion

The state courts' conclusions and rejection of Petitioner's claims did not result in decisions that were contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED**.

## V. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

*El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could debate the Court's resolution of Petitioner's first claim regarding the prosecutor's closing argument on second-degree murder and Petitioner's related claim about his attorneys' failure to object at trial or raise the issue on appeal. Therefore, a certificate of appealability may issue on claims 1 and 2.

Reasonable jurists would not debate the Court's resolution of the remaining claims. The Court therefore declines to issue a certificate of appealability on claim 3 - 7.

        s/Nancy G. Edmunds  
        Nancy G. Edmunds  
        United States District Judge

Dated:  January 4, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 4, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer  
        Case Manager